UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: BAYER HEALTHCARE LLC      )  | Case No.  1:12 MD 2319 |
| AND MERIAL LIMITED FLEA             ) | |
| CONTROL PRODUCTS MARKETING  ) | Judge Dan Aaron Polster |
| AND SALES PRACTICES LITIGATION  ) | |
| ) | **MEMORANDUM OF OPINION** |
| ) | **AND ORDER** |
| ) | |

**\*THIS DOCUMENT APPLIES TO ALL CASES\***

Before the Court is Defendants' Motion for Summary Judgment, filed on October 3, 2012 (**Doc #: 45** ("the Motion")).  Therein, the Bayer and Merial Defendants seek summary judgment in their favor because (1) Plaintiff have failed to demonstrate, in accordance with the Court's evidentiary framework, how Defendants' evidence supporting their claims is unreliable, inaccurate, or incomplete; and (2) whether Defendants dispersion claims are false misleading or deceptive.

Shortly after the motion was filed, Plaintiffs filed a motion for discovery seeking 30 pages of interrogatories, a 25-page request for production of documents addressed to Defendant Merial, a 23-page request for production addressed to Defendant Bayer, depositions of Defendants, and depositions of the scientists who authored the studies Defendants adduced in support of their advertised claims.  (Doc #: 46.)  Following briefing, the Court issued an order, reminding Plaintiff's counsel that this was not the limited discovery the Court contemplated at the September 4, 2012 teleconference.  (Doc #: 49.)  More specifically, the Court noted that it

had said,

> from the beginning—and Plaintiffs have always agreed—that this is a false-advertising case. Accordingly, the question is not whether Defendants' products actually work on each and every individual pet. Rather, the question is whether Defendants have substantial support for their product advertisements. In accordance with the protocol established by the Court upon the consent of the parties on May 1 (see Doc. # 17), Defendants submitted to the Court recent studies published in peer-reviewed journals that substantiate their advertised claims. Thus, the only meaningful discovery would be evidence calling into question the validity of these studies.

(Id. at 1-2.) With this, the Court denied most of Plaintiffs' discovery requests. The Court did, however, allow the following limited discovery.

> Defendants must produce all consumer complaints received from January 1, 2009, to the present (the approximate period of the studies upon which Defendants rely) about the products at issue in this case. If it turns out Defendants received a large volume of consumer complaints relative to sales about the effectiveness of their products, that would call into question Defendants' reliance upon the studies as a basis for their advertised claims.

(Id. at 2.) Thus, the Court issued a schedule for limited discovery and briefing going forward. (Id.) The Court has now reviewed the Motion, the Opposition Brief (Doc #: 59), the Reply (Doc #: 60), and the Surreply (Doc #: 61 at 5-10). For the following reason, the Court **GRANTS** the Motion.

The Court previously ruled that Defendants have produced studies substantiating their representations about the dispersion of their products over the surface of pets' skin. (Doc #: 49, at 2.) Given the above, the only question before the Court is whether there are so many consumer complaints challenging Defendants' representations about dispersion that they call into question the validity of Defendants' studies, and that would therefore put Defendants on notice that the studies upon which they were relying to make these representations were flawed. In other words, if the "facts on the ground" were that a significant percentage of customers reported

that their pets had bites on their bodies in places other than where Defendants' products were applied, Defendants would no longer be reasonable in relying upon the studies validating their claims of topical dispersion over the bodies of pets.

According to Merial, the rate of customer complaints from 2009 through 2012 for all of its Frontline products (i.e., Frontline Plus for Dogs, Frontline Plus for Cats, Frontline Top Spot for Dogs, Frontline Top Spot for Cats, Frontline Spray and Certifect for Dogs) is .046%. According to Plaintiffs, research indicates that only one out of 25 dissatisfied customers will actually express dissatisfaction with a purchased product. (Opp. Br. at 6 n.7.) Even assuming this extrapolation is accurate, the number of dissatisfied consumers would rise to 1.15%. Put another way, this extrapolation shows that slightly less than 99% of Merial's customers were dissatisfied with their Frontline products. And there are even fewer consumer complaints with regard to Bayer's products.

Rather than address head-on the insignificant number of consumer complaints the Court ordered Defendants to produce, Plaintiffs attempt to recast the issue before the Court in the first sentence of their opposition brief:

> The only issue presented to this Honorable Court for review is whether Defendants' flea control products enter the bloodstream of the pets when applied as instructed.

(See Opp. Br. at 4.) According to Plaintiffs, the question is not whether Defendants' studies support their advertising representations regarding translocation, but whether Defendants' products disperse externally or internally. According to Plaintiffs, some product has been found in the blood stream of pets – an amount that may be biologically relevant to the question of how the product is dispersed. This is a red herring.

-3-

The existence of small amounts of Bayer's imidacloprid and Merial's fipronil in animals' blood is not material for three reasons.  One, the detection of some product in the bloodstream is irrelevant to the question whether Defendants have reliable, accurate and complete scientific studies to back up their dispersion claims.  Two, Plaintiffs' evidence that small amounts of product may be in the blood does not prove that Defendants' dispersion claims are wrong.  Three, the detection of small amounts of product in the blood is not material because Defendants' labeling and advertising does not make any claim regarding whether any amount of the product can get into the blood.

Because Plaintiffs have not produced any evidence that Defendants do not have a good faith basis for their advertised representations concerning topical dispersion,[1] the Court **GRANTS** Defendants' Motion for Summary Judgment (**Doc #: 45**.)

**IT IS SO ORDERED.**

 */s/ Dan A. Polster    March 19, 2013*
**Dan Aaron Polster**
**United States District Judge**

---

[1] These purported nationwide class action allegations against Bayer and Merial were false advertising claims, and not product defect claims.  Plaintiffs were not seeking to litigate the actual experience of pet owners with Defendants' products, as that could never be amenable to class action treatment.  Nevertheless, the paucity of consumer complaints for these products, whose effectiveness (or lack thereof) become readily apparent within a short time after application, strongly suggests that these products are effective in combatting fleas in pets.